Sandra WETZEL and Mari Ross, on behalf of themselves and all others similarly situated, Equal Opportunity Commission as amicus curiae

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Appellant.**

No. 74–1515.

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1974.

Decided Jan. 23, 1975.

As Amended Feb. 25, 1975.

Kalvin M. Grove, Paul J. Cherner, Lederer, Fox & Grove, Chicago, Ill., Robert A. Penney, Boston, Mass., Clem R. Kyle, Pittsburgh, Pa., for appellant.

Howard A. Specter, Litman, Litman, Harris & Specter, P.A., Robert F. Stone, Fine, Perlow & Stone, Pittsburgh, Pa., for appellees.

Before STALEY, ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises significant questions concerning the management of class actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970), as amended, Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq. (Supp. II, 1972).

Appellant, Liberty Mutual Insurance Company (Liberty Mutual), is a casualty insurance company with offices throughout the country. Both men and women are employed in the claims department of these offices in what the appellant terms a "technical" capacity. Within its claims department are adjusters and representatives, each of whose basic function is the application of the necessary technical skills to investigate and bring about the proper disposition of claims against the company. While each is an entry level position open to college graduates, the salary of a claims adjuster is considerably higher than that of a claims representative. The possibilities for promotion are unlimited for the claims adjuster; they are severely limited for the claims representative. Before the filing of charges in this case by the appellees, Sandra Wetzel and Mari Ross, the position of claims adjuster was staffed pre-

dominantly by males; the position of claims representatives was staffed predominantly by females.[1]

Wetzel and Ross were employed as claims representatives in the Pittsburgh office of the company. Both desired the higher paying adjuster's position but were informed by the Company that it was not open to women. Dissatisfied with the Company's policies, they filed charges of sex discrimination with the Pennsylvania Human Relations Commission (PHRC) on May 11, and with the Equal Employment Opportunity Commission (EEOC) on May 14, 1971.

The filing of these charges apparently led the Company to reassess its policies concerning these positions. In August, 1971, the Company decided to recruit women to become claims adjusters and reviewed its roster of claims representatives to ascertain if any such representatives were interested in, and qualified for, the position of claims adjuster. This decision eventually led to the hiring of approximately 10% of the claims representatives as claims adjusters.

After the filing of the charges with PHRC, the Company offered Wetzel and Ross positions as claims adjusters. Because of information which they had received from PHRC concerning back pay, and because of their belief that the job offer was accompanied by unacceptable conditions, they rejected the offer. Since PHRC had failed to conciliate the parties, Wetzel and Ross were issued right to sue letters by the EEOC. On February 28, 1972, Wetzel and Ross commenced a class action alleging that the Company's hiring and promotion policies and its pregnancy related policies as to the female technical employees in its claims department violated Title VII. They further alleged that the Company's policy of paying higher salaries to claims adjusters than to claims representatives

violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1970).

In response to Wetzel's and Ross' motions, the district court, on August 16, 1972, ordered that the suit was maintainable as a class action[2] under Rule 23(b)(2) and that the class would include "all present and future female technical employees in the defendant's claim department without limitation to territory in the entire geographical area where defendant does business." On September 14, 1972, the court refused to require notices to be sent to the proposed nationwide class and declined to maintain the class under Rule 23(b)(3). In its final order of December 6, 1973, the court amended the class to include former, as well as present and future female technical employees, and reaffirmed its determination to maintain the class under Rule 23(b)(2), rather than Rule 23(b)(3). The court acknowledged, however, that the class was maintainable under either subsection. It also saw "no immediate necessity of the class action notice required of actions proceeding under Fed. R.Civ.P. 23(b)(3)." No notice had been sent to any members of the class as of the date of this appeal.

On March 26, 1973, Wetzel and Ross moved for partial summary judgment.[3] Counsel for both sides agreed that the equal pay claim was not susceptible to summary judgment treatment because disputed issues of fact existed as to whether the work performed by claims representatives was equivalent to that performed by claims adjusters. On January 9, 1974, the court entered an interlocutory order that the pregnancy-related policies of the Company violate Title VII, "are continuing violations and are the proper subject of injunctive relief." On February 20, 1974, the district court rendered final the interlocutory order. A notice of appeal was filed and was

---

1. The differences in Liberty Mutual's hiring and promotional practices as to claims representatives are set out in greater detail, *infra* at pp. 257–258.

2. All references to rules are references to the Federal Rules of Civil Procedure.

3. Only the question of liability was to be decided at that time. Determination of the relief to be granted was left for further proceedings.

docketed at No. 74–1233. That appeal is presently before another panel of this court and the issues in that appeal do not concern us here.

The district court in its interlocutory order of January 9, 1974, also ruled that the hiring and promotion policies of the Company violated Title VII, but denied injunctive relief [4] "[b]ecause the evidentiary materials show that at certain times subsequent to the filing of the administrative charge or the within Complaint the Defendant has ceased or discontinued the discriminatory practice[s]." [5] In an unsuccessful attempt to avoid piecemeal appeals, the court, on March 19, 1974, rendered final this part of the interlocutory order. In this appeal, Liberty Mutual has asked us to review the district court's management of the class action and its granting of summary judgment against the challenged hiring and promotion policies.

# I

## A. Jurisdiction

Preliminarily, we note that, despite Wetzel's and Ross' contentions, we have jurisdiction to review the class action aspects of this case. The district court, purusant to Rule 54(b), rendered final the partial summary judgment as to the Company's hiring and promotion policies on March 19, 1974. The determination of the class became final for the purposes of 28 U.S.C. § 1291 at that time. The notice of appeal, filed April 15, 1974, was timely as to all aspects of that judgment, including the determination of the affected class.

## B. Scope of Review

Before examining Liberty Mutual's contentions, we must first decide the appropriate scope of review of the district court's actions. The extent of the scope of review is of the utmost importance for, in some instances, it effectively determines whether the actions of the district court will be sustained. Lengthy deliberations on the subject are not necessary, however, because the question is settled in this circuit by the recent case of Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir.) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), in which Judge Gibbons wrote:

> [The scope of review] will depend to some extent upon which facet of the multi-faceted determination is challenged on appeal. The district court must determine if the four prerequisites for a class action listed in rule 23(a) have been met. These are mandatory requirements, and our review decides whether the mandates have been met. The district court must also determine whether the class action is maintainable under rule 23(b)(1) or (2) so that it may proceed without notice to or identification of the class members. Our review will determine whether the court properly classified the type of class action in reaching its decision as to class action treatment.

*Id.* at 756 (citations omitted). Inasmuch as the district court appropriately applied the criteria of Rule 23(a), the scope of our review is whether the trial court did abuse its broad discretion.[6]

4. The opinion of the district court is reported at 372 F.Supp. 1146 (W.D.Pa.1974).

5. *Id.* at 1163.

6. The scope of review is summarized by Professor Moore:

> In determining whether an action brought as a class action is to be so maintained the trial court should carefully apply the criteria, set forth in Rule 23 . . . ., to the facts in the case; and if it fails to do so its determination is subject to reversal by the appellate court when the issue is properly before the latter court. On the other hand, where the trial court does apply the Rule's criteria to the facts of the case, the trial court has [a] broad discretion in determining whether the action may be maintained as a class action and its determination should be given great respect by a reviewing court.

3B J Moore, Federal Practice ¶ 23,50, at 1104–05 (2d ed. 1974), quoted with approval in Katz v. Carte Blanche Corp., 496 F.2d at 757.

## II

The mandatory requirements of Rule 23(a)[7] must first be met to maintain a class action. Liberty Mutual has made numerous attacks on the determination made by the district court that the requirements of 23(a) had been met. After careful consideration of its contentions, we need to discuss only two.

First, Liberty Mutual contends that it was error to include in the class all female technical employees who had been employed since July 1, 1965. It contends that employees whose claims are time barred by the statute of limitations contained in them section 706(d) of Title VII, 42 U.S.C. § 2000e–5(d) (1970), should be excluded from the class.[8]

We agree with Liberty Mutual that such individuals should have been excluded. At the time charges were filed with the EEOC, section 706(d) provided that where, as here, a charging party had instituted proceedings with a state agency which has jurisdiction over discriminatory employment practices, a charge must be filed with the EEOC within 210 days of the occurrence of the alleged unfair practice.[9]

As stated in Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 986 (1973):

Since a suit in court depends on an agency notice to sue letter and since the agency cannot take the case initially unless the timely filing requirements are met, the timely filing requirements with respect to EEOC appears to be a jurisdictional prerequisite to court action under Title VII.

A plaintiff may bring a class action on behalf of those who have not filed charges with the EEOC. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719–720 (7th Cir. 1969); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968). This tolls the statute of limitations for all members of the class. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). But Wetzel and Ross cannot represent those who could not have filed a charge with the EEOC at the time they filed their charges. CWA v. New York Telephone Co., 8 F.E.P. 509, 513 (S.D.N.Y.1974); Culbert v. General Electric Co., 5 F.E.P. 969, 993 (E.D.Va.1973); Garneau v. Raytheon Co., 3 F.E.P. 1315 (D.Mass.1971).

This conclusion does not mean, however, as Liberty Mutual contends, that the numerosity requirement of 23(a)(1) has not been met. Wetzel's and Ross' charges alleged the maintenance of discriminatory hiring and promotion policies up to the time of the filing of their complaint. Such policies are continuing violations of Title VII and would allow a filing of a charge at any time by a present employee. Macklin v. Spector Freight Systems, Inc., supra, 478 F.2d at 987–988. The only employees barred from the class are those who left the employ of the Company more than 210 days before the filing of the charges with the EEOC by Wetzel and Ross. The class will be larger than the approximately seven hundred female technical employees presently employed by Liberty Mutual, meeting the numerosity requirement of 23(a)(1). Of course, in the determination of the relief to which members of the class will be entitled, the

---

7. Rule 23(a) provides:

   (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

8. Since the filing of a charge with the EEOC is a jurisdictional requirement, we may consider the issue here although Liberty Mutual did not raise it in the district court.

9. The Equal Employment Opportunity Act of 1972, Pub.L.No. 92–261, § 4, 86 Stat. 104 (March 24, 1972), extended the time for filing in such cases to 300 days and renumbered § 706(d) as § 706(e). The effective date of the amendment was March 24, 1972, after the filing of the complaint in the district court.

district court should take into account the modification of the class required by section 706(d).

The second attack on the district court's determination that the conditions of Rule 23(a) have been met is the contention that Wetzel and Ross were not adequate representatives of the class as required by Rule 23(a)(4).

■ Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968).

Liberty Mutual does not dispute the district court's finding as to the competency of counsel but it does object to the court's finding of "no conflict or antagonism between Wetzel's and Ross' claims and the claims of the class." Liberty Mutual contends that employees, such as Wetzel and Ross, who have voluntarily severed their employment prior to suit cannot adequately represent members of the class who are presently employed by the company. We note the existence of a dispute as to whether Wetzel's and Ross' termination of employment was , in fact, voluntary, but we will assume, arguendo, that they voluntarily severed their employment.

■ We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices.[10] Whether a party adequately represents a class depends on all the circumstances of the particular case. 3B J. Moore, Federal Practice ¶ 23.07 [1] (2d ed. 1974) [hereinafter cited as *Moore*]. That a person is no longer employed with a company and is not entitled to reinstatement is but one of the circumstances to be considered in the determination of whether Rule 23(a)(4) has been met. In fact, as the court observed in Mack v. General Electric Co., 329 F.Supp. 72, 76 (E.D.Pa.1971), with respect to plaintiffs who were former employees of the company, "being familiar with [the company's] employment practices and being free from any possible coercive influence of [the company's] management, [the plaintiffs] are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against [the company's] alleged discriminatory practices." Moreover, were the position advanced by Liberty Mutual adopted, employers would be encouraged to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action. Reed v. Arlington Hotel Co., 476 F.2d 721 (8th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

■ In the present case, the district court specifically found that the requirements of Rule 23(a)(4) have been met. The interests of Wetzel and Ross in combatting the sexually discriminatory policies of the Company surely are coextensive with all female technical employees, whether formerly or presently employed. We do not perceive any interests of the former employees antagonistic to those of the present employees. The relief to

---

10. A former employee has standing to bring such a suit. Hackett v. McGuire Bros., Inc., 445 F.2d 442 (3d Cir. 1971).

We are aware that, in a similar situation, the Sixth Circuit has reached the opposite conclusion. Heard v. Mueller Co., 464 F.2d 190 (6th Cir. 1972). However, in *Heard* the former employee attempted to represent a class of present and prospective employees only. Here the class includes past employees as well. Further, the court in *Heard* decided that the company's employment practices were not discriminatory before deciding the class action issue. Here, of course, no such determination was made. Finally, the only support for the holding in *Heard* was Huff v. N. D. Cass Co., 468 F.2d 172 (5th Cir. 1972), which was subsequently reversed in Huff v. N. D. Cass Co., 485 F.2d 710 (5th Cir. 1973) (en banc).

be granted by the district court,[11] whether it takes the form of back pay, mandatory hiring of female claims adjusters, or increased promotional opportunities for women will benefit all members of the class.[12] We see no other factors revealing that the plaintiffs were not adequate representatives of the class. The district court did not abuse its discretion in holding that Wetzel and Ross adequately represented the class.

### III

#### A. Characteristics of (b)(2) and (b)(3) actions

In addition to meeting the mandatory requirements of Rule 23(a), the class must be maintainable under either subsection 23(b)(1), (b)(2), or (b)(3).[13] In the usual class action, the determination of whether the action should proceed as a 23(b)(2) or as a 23(b)(3) action offers little difficulty. In the present case, however, the order of the district court finding injunctive relief unnecessary as to Liberty Mutual's hiring and promotional practices in its claims department, because the Company's practices as to these issues have ceased, presents complications. (Whether (b)(2) or not (b)(2) is indeed *the* question.)

In the instant case, the district court found that the class could be maintained under either 23(b)(2) or 23(b)(3), but exercising its discretion decided to maintain the class under 23(b)(2). Liberty Mutual vigorously contends that the class could only be maintained under (b)(3), and that the procedural prerequisites for maintaining a (b)(3) suit have not been met. We find no error in the district court's determination that the class was properly maintainable under (b)(2).

In reviewing Liberty Mutual's contentions, it is necessary to understand the basic nature of (b)(2) and (b)(3) suits and the res judicata effects of judgments upon members of the respective classes.

A (b)(2) suit is permitted when the opposing party has acted or refused to act on grounds generally applicable to the class. Advisory Committee's Note to Proposed Amendments to Rule 23, 39 F.R.D. 69, 102 (1966) [hereinafter cited as Advisory Committee]. By its very nature, a (b)(2) class must be cohesive as to those claims tried in the class action. Note, Managing the Large Class Action: Eisen v. Carlisle & Jacquelin, 87 Harv.L. Rev. 426, 441 (1973). The rule recognizes that the res judicata effect of a judgment may only be tested in a subsequent

---

**11.** We intimate no opinion as to what relief, if any, is appropriate.

**12.** We believe that Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974), upon which Liberty Mutual relies, is distinguishable because there the relief to former stewardesses (reinstatement with no loss of seniority) would have been antagonistic to the interests of stewardesses presently employed with less seniority. Here, the only group whose interests are hostile to those of the class are the male claims adjusters, and they, of course, are not members of the class.

**13.** Rule 23(b) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 \* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

action. Advisory Committee, *supra* at 106, *citing* Restatement of Judgments § 86, comment (h), § 116 (1942). Because of the cohesive nature of the class, Rule 23(c)(3)[14] contemplates that all members of the class will be bound. Advisory Committee, *supra* at 106; C. Wright, Federal Courts § 72, at 314 (2d ed. 1970) [hereinafter cited as *Wright*]. Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.[15]

Rule 23(b)(3) permits a class action where the questions of law or fact common to the class predominate over questions only affecting individual members and the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." While not a true successor to the "spurious" class action which existed prior to the 1966 amendments, *Wright, supra* at 312, the (b)(3) class action developed therefrom. In the spurious class action, members of the class would be bound by the judgment only if they intervened in the action. *Moore, supra* at 702. Various courts of appeals permitted intervention after a judgment favorable to the class. Many commentators objected that such one-way intervention resulted in binding the members of the class only when the class had won. To eliminate the unfairness of this one-way intervention, the Advisory Committee concluded that class members should be brought in prior to the final determination of a defendant's liability, thus making the estoppel mutual. *See* Katz v. Carte Blanche Corp., *supra*, 496 F.2d at 759; Advisory Committee, *supra* at 105.

Binding all members of a (b)(3) class, however, was not thought by the Advisory Committee to be as fair as binding all members of a (b)(2) class. By the very nature of a heterogeneous (b)(3) class, there would be many instances where a particular individual would not want to be included as a member of the class.[16] To respect these individual interests, Rule 23(c)(2)[17] was written to afford an opportunity to every potential member to opt out of the class. *See* Katz v. Carte Blanche Corp., *supra* at 759; Advisory Committee, *supra* at 104–105. For the opt out procedure to be effective, 23(c)(2) also provides for notice to be sent to all potential members prior to the final determination of the class. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

14. Rule 23(c)(3) provides:

> (3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

15. *See* Katz v. Carte Blanche Corp., *supra*, 496 F.2d at 759; *Wright, supra* at 306.

16. An excellent example is the situation found in Katz v. Carte Blanche Corp., *supra*, in which it was alleged that Carte Blanche violated the Truth in Lending Act in its disclosure of finance charges. Assume, contrary to the decision, that a (b)(3) class was allowed to be maintained. Carte Blanche might have counterclaimed against the members of the class for amounts owing from use of the credit card. A delinquent account debtor might have decided that a judgment for amounts owing would outweigh any benefits he might obtain from a favorable judgment resulting from the Truth in Lending Act violation.

17. Rule 23(c)(2) provides:

> (2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

■ With the potential unfairness to members of the (b)(3) class eliminated by the opt out procedure, 23(c)(3) contemplates that all members of the (b)(3) class, as well as members of the (b)(2) class, will be bound by the res judicata effect of the judgment. *Wright, supra* at 314.

### B. Appropriateness of (b)(2) for this action

Liberty Mutual contends that this suit could not have been maintained as a class action under (b)(2) because such class actions are limited to only those suits in which final injunctive relief is found to be appropriate. In support of this position, Liberty Mutual relies on the language of (b)(2),[18] the comments of the drafters of the rule,[19] and the case of Air Line Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc., *supra.*[20]

The district court, after discovery and extensive briefing, considered whether the action here was properly maintained under (b)(2) three separate times. In its last memorandum order of December 6, 1973, the court indicated that maintenance under (b)(2) was proper because Liberty Mutual had " 'acted or refused to act on grounds generally applicable to the class' and the representative plaintiffs seek among other remedies, 'final injunctive relief or corresponding declaratory relief.' " In his opinion of January 9, 1974, Judge Weber noted:

Because the evidentiary materials show that at certain times subsequent to the filing of the administrative charge or the within Complaint the

Defendant has ceased or discontinued the discriminatory practices, injunctive relief is not appropriate as to those practices.

372 F.Supp. at 1163.

■ The precise issue before us then is whether a district court, having determined that a Title VII suit brought in good faith for injunctive relief may be maintained under (b)(2), is required to redetermine that the suit be maintained under (b)(3) and comply with its procedural requirements once it concludes on a motion for summary judgment that changed conditions make injunctive relief no longer appropriate. We decline to so hold.

First, a Title VII suit against discriminatory hiring and promotion policies is necessarily a suit to end discrimination because of a common class characteristic, in this case sex. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968). The conduct of the employer is actionable "on grounds generally applicable to the class," and the relief sought is "relief with respect to the class as a whole." The class, all sharing a common characteristic subjected to discrimination, is cohesive as to the claims alleged in the complaint. Thus, a Title VII action is particularly fit for (b)(2) treatment, and the drafters of Rule 23 specifically contemplated that suits against discriminatory hiring and promotion policies would be appropriately maintained under (b)(2). Advisory Committee, *supra* at 102. Since a Title VII suit is essentially equitable in nature,[21] it cannot be character-

---

18. *See* note 13 *supra.*

19. "[Subdivision (b)(2)] does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Advisory Committee, *supra* at 102. *See Moore, supra* at 654.

20. Airline stewardesses had brought suit seeking injunctive relief against the airlines' policy of permanently discharging pregnant stewardesses. After the institution of the suit, the airlines eliminated the practice. The court noted:

When the airlines ended their discharge policy, the actions became virtually moot

as far as the currently employed stewardesses were concerned, and purely prospective relief against the practice became of little moment. The (b)(3) character of the actions, while always present as to the discharged stewardesses, became even more obvious.

490 F.2d at 643. For a further discussion of the case, see note 30 *infra.*

21. "Thus, the action and the relief authorized are essentially equitable in nature. This is true not only of traditional injunctive relief which may be granted, but also of the back pay award." Franks v. Bowman Transp. Co.,

ized as one seeking exclusively or predominantly money damages. Franks v. Bowman Transp. Co., 495 F.2d 398 (5th Cir. 1974).

■ The basic nature of a Title VII suit is not altered merely because the employer's change of discriminatory policy prior to the motion for summary judgment has obviated the need for injunctive relief. The conduct of the employer is still answerable "on grounds generally applicable to the class," and the relief sought is still "relief with respect to the class as a whole." The cohesive characteristics of the class are the vital core of a (b)(2) action. Functionally, these characteristics of the class are still intact in the suit. Nothing has changed to require the procedural protections of (b)(3) to determine the presence or absence of liability. The class is still appropriately maintained under (b)(2).

■ Second, the language of (b)(2) does not support the contention that (b)(2) actions are limited to final injunctive relief or declaratory judgments only. Rather, the language describes the type of conduct by the party opposing the class which is subject to equitable relief by class action under (b)(2). As recently stated in Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 257 (5th Cir. 1974),

> All that need be determined is that conduct of the party opposing the class is such as makes such equitable relief appropriate. This is no limitation on the power of the court to grant other relief to the established class, especially where it is required by Title VII . . . .

Liberty Mutual's policies at the time these charges were made were such that final injunctive relief was appropriate. This satisfies the language of the rule.[22]

The nature of these policies, and the nature of the class opposing these policies, does not change merely because subsequent action by Liberty Mutual eliminates the need for final injunctive relief.

■ Moreover, although the court found that injunctive relief was unnecessary, it did determine the presence of liability on the part of Liberty Mutual. The court did not preclude the possibility of directing affirmative action,[23] in addition to back pay, to remedy conditions caused by the offensive discriminatory practices. Such affirmative action ultimately would, in effect, constitute final injunctive or declaratory relief. "No one has suggested that this [relief] violates the dictates of subdivision (b)(2)." Pettway v. American Cast Iron Pipe Co., *supra* at 257.

Courts have held that a (b)(2) class is appropriate in a Title VII suit where both final injunctive and monetary relief are granted. Franks v. Bowman Transp. Co., *supra*, 495 F.2d at 422; Pettway v. American Cast Iron Pipe Co., *supra*, 494 F.2d at 257; Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1375 (5th Cir. 1974); Robinson v. Lorillard Corp., 444 F.2d 791, 801–802 (4th Cir. 1971), petition for cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); Bowe v. Colgate-Palmolive Co., *supra*, 416 F.2d at 720. Maintenance of a class action under (b)(2) in a Title VII action has also been held to be appropriate when the actions of the defendant after the complaint had been filed had obviated the need for final injunctive relief. Arkansas Education Ass'n v. Board of Education, 446 F.2d 763 (8th Cir. 1971).

Additionally, only with the benefit of hindsight do we now know that injunctive relief against the Company's hiring and promotion practices was not necessary in this case. At the (c)(1) hearing,

---

495 F.2d 398, 406 (5th Cir.), cert. denied, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644, 43 U.S.L.W. 3328 (1974).

**22.** The district court in its first class action order dated August 16, 1972, stated:

> [W]e find that the defendant has acted or refused to act on grounds generally applica-

ble to the class, thereby making appropriate final declaratory or injunctive relief with respect to the class as a whole. Claims of sexual discrimination are particularly appropriate for such determination.

**23.** 372 F.Supp. at 1163. We do not suggest what relief, if any, may be appropriate.

the district court specifically found that the conduct of Liberty Mutual made appropriate final injunctive relief.[24] Requiring the court to reconsider and possibly redetermine the class at the time of the summary judgment application and redirect the course of the litigation with notice and other procedural requirements would inevitably complicate a type of litigation which by its nature is complex at its best. For this court to compel a redetermination of the class at that point probably would require the district court to consider the merits of the case, and ultimately would lead to a practice of holding a preliminary hearing on the merits at the time of the initial (c)(1) class determination. This, of course, the Supreme Court has made clear the district court may not do:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule . . . . [It] is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "as soon as practicable after the commencement of [the] action . . . ."

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). It is at the (c)(1) hearing that the class must be shown to possess the characteristics required by (b)(2). Of course, the district court may amend its determination at a later date. See 23(c)(1). But we decline to hold that a court must reconsider its determination when, at the decision for summary judgment, it finds injunctive relief to be inappropriate.

Finally, we have reviewed the (b)(2) issue on this appeal as if the action in

the district court involved only the hiring and promotion policies of Liberty Mutual. Wetzel and Ross, however, also attacked in the district court Liberty Mutual's pregnancy related policies, and its policy of paying higher salaries to claims adjusters than to claims representatives. Due to the piecemeal nature of the appeals from the district court, the only substantive issue before us involves the hiring and promotion policies, but in the absence of the argument by Liberty Mutual that different classes should have been created for different issues,[25] we must consider the propriety of the class determination in the light of all the substantive issues raised in the district court. Liberty Mutual has changed, as a result of the charges brought by Wetzel and Ross, neither its pregnancy related policies, nor its higher salary policy to claims adjusters. In the event these policies are found to be violative of Title VII, final injunctive relief will be necessary as redress. The (b)(2) nature of the class, while visible as to the promotion and hiring issues, becomes translucent when viewed in the light of the multifaceted attack upon Liberty Mutual's policies.

Liberty Mutual also contends that if the requirements of both (b)(2) and (b)(3) are met, the court should certify the class under (b)(3) to provide the procedural protections, namely notice and opting out, which (b)(3) affords members of the class. Virtually every class action meeting the requirements of 23(b)(2) will also meet the less severe requirements of 23(b)(3). Van Gemert v. Boeing Company, 259 F.Supp. 125, 130 (S.D.N.Y.1966). If the actions are classified under (b)(3), members of the class could elect to opt out and thereby not be bound by the judgment. This would permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class

**24.** See note 22 supra.

**25.** Rule 23(c)(4)(A) permits an action to be brought or maintained as a class action as to particular issues only. See note 28 infra. From our review of the record, it does not appear that Liberty Mutual had requested the district court to maintain the class under (b)(3) as to its hiring and promotion policies, while maintaining the class under (b)(2) for the other issues. In this court, Liberty Mutual has attacked only the maintenance of the class as a whole.

with one conclusive adjudication. Van Gemert v. Boeing Company, *supra* at 130–131. As discussed above,[26] the procedural protections of (b)(3), opting out and notice, are necessary because of the heterogeneity of the (b)(3) class. They are unnecessary for the homogeneous (b)(2) class.

▮▮ The recent Supreme Court decision in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), does not support the Company's contention. *Eisen* does not extend the (b)(3) notice requirement to (b)(2) actions, nor to actions maintainable under either (b)(2) or (b)(3). We therefore agree with the *Van Gemert* principle that an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3) which serve no useful purpose under (b)(2). This principle has been widely adopted in the federal courts. *See Moore, supra* ¶ 23.31[3] and cases cited therein.

### C. Inclusion of former and future employees

▮▮ Liberty Mutual asserts that the inclusion of former employees in the (b)(2) class was an abuse of discretion because such employees, even at the time of the filing of the complaint, could only have been interested in monetary relief. It again relies on Air Line Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc., *supra.*[27]

A short answer to this contention is that former employees may well be interested in the. eradication of the Company's discriminatory policies and their effect. Employees who had despaired of becoming claims adjusters, or of receiving promotions to positions higher than those of claims representative supervisor, may desire to renew their employment with Liberty Mutual if the discriminatory practices are terminated.

▮▮ Moreover, even if the former employees were interested in only monetary relief, Rule 23(c)(4)(B)[28] permits, but does not require, the district court to divide the class into appropriate subclasses. Such subdivision is required where

the class includes . . . subclasses with divergent interests, or where certain representatives adequately represent only one group and other representatives represent another group.

*Moore, supra,* ¶ 23.65, at 1251, and cases cited therein. Here, as we have observed, the interests of the former and present employees in this class action are congruent: the elmination of, and relief from, Liberty Mutual's discriminatory policies. We do not perceive any interests of the two groups which are mutually antagonistic. We also believe that the former employees can adequately represent the interests of the present employees.[29] The district court did not abuse its discretion by failing to create subclasses.[30]

---

26. *See* pp. 248–250 *supra.*

27. *See* note 20 *supra.*

28. Rule 23(c)(4) provides:

> (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

29. *See* pp. 247-249, *supra.*

30. The congruence of interests and absence of antagonism between the two groups distinguish this case from Air Line Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc., *supra,* both as to this issue of subclasses and the issue of whether the class was properly maintained under (b)(2). *See* p. 250–252, supra. In *Air Line Stewards,* American Airlines and TWA had permanently discharged stewardesses who became pregnant. The Association, certified bargaining representative for airline cabin attendants, brought suit to enjoin the practice, and after the companies terminated the practices, negotiated a settlement. Objecting stewardesses appealed approval of the settlement by the district court. The appellate court noted that the Association, which was composed of active airline attendants, could not adequately represent the former attendants because the two groups had conflicting interests. The former stewardesses would desire reinstatement with

■ Liberty Mutual additionally contends that inclusion of future employees in the class is improper because injunctive relief has been found to be unnecessary by the district court. As noted above,[31] the district court may well conclude that affirmative relief is necessary to completely dissipate the effects of the Company's discriminatory policies. If it so finds, the inclusion of future employees in the class may be useful. However, if the court should find that such affirmative relief is unnecessary, inclusion of future employees would appear to be improper.

## IV

Liberty Mutual contends that if the action is maintainable under (b)(2), we should hold that notice should have been given prior to determination of liability to all members of the class, either under our supervisory powers over the circuit district courts or under the requirements of due process.[32]

Suits brought by private employees are the cutting edge of the Title VII sword which Congress has fashioned to fight a major enemy to continuing progress, strength, and solidarity in our nation, discrimination in employment.

> What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Class actions, which allow attorneys to receive fees commensurate with time and effort expended on what often are complex and difficult litigations, are powerful stimuli to enforce Title VII. The imposition of notice and the ensuing costs often discourage such suits. *See* Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 179, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Therefore, we are reluctant to impose notice requirements under our supervisory power for Title VII (b)(2) actions unless Rule 23 so requires or unfairness will result to the parties.

■ Rule 23 definitely does not require mandatory notice for (b)(2) actions. By its terms,[33] the mandatory notice requirement of (c)(2) applies only to actions maintained under (b)(3).

> Whether the court should require notice to be given to members of the class to make a determination [of whether a class should be maintained under (b)(2)] or of the order embodying it, is left to the court's discretion under subdivision (d)(2).

Advisory Committee, *supra* at 104. We will not presume to exercise supervisory powers, as urged upon us by counsel for Liberty Mutual, to mandate notice which the Federal Rules of Civil Procedure, promulgated by the Supreme Court under authority from Congress, 28 U.S.C. § 2072, specifically do not require.

Moreover, in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court held that there should be strict adherence to the notice requirements of Rule 23(c)(2). In the light of *Eisen*, deviation

no loss of seniority, leapfrogging them over less senior active stewardesses. Seniority had an important effect on promotions, trip assignments, and other aspects of employment. The court, desirous of allowing the former stewardesses to opt out of the settlement, held that a (b)(3) subclass should have been created. Here, we perceive no need for former employees to opt out.

**31.** *See* p. 251 *supra.*

**32.** There is a serious question whether Liberty Mutual, during a colloquy with Judge Aldisert, abandoned its due process contention at oral argument. We consider the contention,

found in the written brief, because the colloquy is not altogether clear and because of the Company's reliance on Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). *Eisen's* requirement of notice in (b)(2) actions was predicated on due process not, as Liberty Mutual contended at oral argument, on the supervisory power of the court.

**33.** Rule 23(c)(2) in pertinent part provides:
In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . .

from the literal requirements of the rule would be incongruous and, at the same time, would also fly in the face of its spirit. As discussed *supra*,[34] mandatory ⌉ notice is required in (b)(3) actions for the effective operation of the "opt out" provision, which is essential to protect the interests of individuals in the heterogeneous group. ⌐ The "opt out" procedure, however, is not necessary for the protection of interests of individuals in the homogeneous (b)(2) class. In the instant case, determination of liability on the part of Liberty Mutual to each member of the class depends on whether it discriminated on the basis of sex. This question is common to the claims of all members of the class. "In the degree that there is cohesiveness or unity in the class . . . the need for notice to the class will tend toward a minimum." Advisory Committee, *supra*, at 106. In this proceeding, the claims of each member of the class rest squarely on the same issue and the need for individual notice is superfluous.

The due process argument presents a more difficult question. Liberty Mutual primarily relies on dictum in Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564–565 (2d Cir. 1968), that

> notice is required as a matter of due process in all representative actions, and 23(c)(2) merely requires a particular form of notice in 23(b)(3) actions. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Several courts of appeals and district courts have followed this dictum.[35] Wetzel and Ross counter with the following dictum of this circuit in Katz v. Carte Blanche Corp., 496 F.2d 747, *supra* at 756:

> The district court must also determine whether the class action is maintainable under rule 23(b)(1) or (2) so that it may proceed without notice to or identification of the class members.

We believe that this battle of the dicta lends scant assistance to either party.[36]

**34.** *See* pp. 249–250 *supra*.

**35.** Schrader v. Selective Serv. Sys. Local Bd. No. 76, 470 F.2d 73 (7th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972); McCarthy v. Director of Selective Serv. Sys., 322 F.Supp. 1032 (E.D.Wis.1970), aff'd per curiam on other grounds, 460 F.2d 1089 (7th Cir. 1972); Zeilstra v. Tarr, 466 F.2d 111 (6th Cir. 1972); Pasquier v. Tarr, 318 F.Supp. 1350 (E.D.La.1970), aff'd per curiam on other grounds, 444 F.2d 116 (5th Cir. 1971); Newman v. Avco Corp., 380 F.Supp. 1282 (M.D.Tenn.1974).

**36.** With the exception of Newman v. Avco Corp., *supra*, the cases in the preceding footnote are suspect in their precedential value on the notice issue because of their confused procedural history.

In Gregory v. Hershey, 311 F.Supp. 1 (E.D. Mich.1969), the district court rendered a declaratory judgment that the class before it was entitled to fatherhood deferments from Selective Service. The *Gregory* court had not provided members of the class with notice. Plaintiffs in the cases upon which Liberty Mutual relies claimed to be members of the class in *Gregory*.

Schrader v. Selective Serv. Sys. Local Bd. No. 76, 329 F.Supp. 966 (W.D.Wis.1971), held the judgment binding despite the lack of notice. Pasquier v. Tarr, 318 F.Supp. 1350

(E.D.La.1970), and McCarthy v. Director of Selective Serv. Sys., 322 F.Supp. 1032 (E.D. Wis.1970), rejected plaintiff's res judicata claims by relying on the dicta in *Eisen.*

Following the decisions in the preceding paragraph, *Gregory* was reversed. The reversal of *Gregory* on the ground that the court had lacked subject matter jurisdiction, 436 F.2d 513 (6th Cir.), cert. denied, 403 U.S. 922, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971), sent these cases back to court and produced several new ones. *Pasquier* and *McCarthy* were affirmed on appeal but on the ground that *Gregory* was void for lack of subject matter jurisdiction. *See* McCarthy v. Director of Selective Serv. Sys., 460 F.2d 1089 (7th Cir. 1972); Pasquier v. Tarr, 444 F.2d 116 (5th Cir. 1971). *Schrader* was reversed because "the absolute failure to give any indicia of notice to absent members render[ed] the purported class in *Gregory* futile." Schrader v. Selective Serv. Sys. Local Bd. No. 76, 470 F.2d 73, 75 (7th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972). Zeilstra v. Tarr, 466 F.2d 111 (6th Cir. 1972), reversed another district court decision holding *Gregory* binding on the grounds that *Gregory* had been void, for lack of both notice and subject matter jurisdiction.

*See* Note, Collateral Attack on the Binding Effect of Class Action Judgments, 87 Harv.L. Rev. 596-597 (1974), upon which the foregoing analysis is predicated.

We believe it preferable to analyze the problem in light of the policies underlying the constitutional requirement of due process.

The due process problem surfaces because the class action judgment binds all members of a (b)(2) class. The Second Circuit in requiring notice relied solely on Mullane v. Central Hanover & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), which concerned the judicial settlement of accounts by the trustee of a trust fund created under state banking law. The Court held that the State could not assert jurisdiction over the trust beneficiaries unless notice were mailed to all whose names and addresses were known, and notice by publication given to those beneficiaries who were unknown or contingent. *Mullane*, however, denied that individual notice was required in every action.

The Supreme Court plainly stated that it had not committed itself to any formula in achieving a balance between the interests of the State and the interests of the individual parties in the litigation or in "determining when constructive notice may be utilized or what test it must meet. Personal notice has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents." *Id.* at 314, 70 S.Ct. at 657. Because the Court linked the requirement of notice to the particular circumstances of each case, it is important to note that the situation in *Mullane* is significantly different from the situation in a (b)(2) class action. First, *Mullane* dealt with the established interests of individuals in specific property, a common trust fund. Second, the interests of all the beneficiaries in that fund were not identical; some were entitled to interest income, while others were concerned with capital growth. These in-

We are inclined to believe that the courts in the above cases reached for the notice requirement as an answer to the complex res judicata effect of the class action rather than carefully considering whether due process actually requires notice to absent members of the class.

terests were represented by different guardians, but the personal interests of the guardians functionally differed from the interests of the beneficiaries. Therefore, a significant possibility existed that they did not adequately represent the beneficiaries in the action.[37] Third, the beneficiaries had a resident fiduciary as a caretaker of their interest in the trust "[b]ut it is their caretaker who in the accounting becomes their adversary." *Id.* at 316, 70 S.Ct. at 658. Under these circumstances, the possibility that parties having conflicting interests in specific property could be bound by an action of which they had no actual notice and brought by parties who possibly represented those interests inadequately does violate due process. This possibility could not occur in a (b)(2) action.

The very nature of a (b)(2) class is that it is homogeneous without any conflicting interests between the members of the class. Since the class is cohesive, its members would be bound either by the collateral estoppel or the stare decisis effect of a suit brought by an individual plaintiff. Thus, as long as the representation is adequate and faithful, there is no unfairness in giving res judicata effect to a judgment against all members of the class even if they have not received notice. Adequacy of representation of the class is a mandatory requirement for the maintenance of a class action under Rule 23(a). If the representation proves inadequate, members of the class would not be bound. Hansberry v. Lee, 311 U.S. 32, 44–46, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Gonzales v. Cassidy, 474 F.2d 67 (5th Cir. 1973). Of course, there may be circumstances when the court, in its discretion, believes that notice to the absent members of the class is necessary for the fair conduct of the action. Rule 23(d)(2) anticipates such situations and permits the court to

37. *See* Comment, Adequate Representation, Notice and the New Class Action Rule; Effectuating Remedies Provided by the Securities Laws, 116 U.Pa.L.Rev. 889, 912–913 (1968).

then require such notice. In most cases, however, "[n]otice would add little or nothing." *Moore, supra* at 1152. We decline, therefore, to hold that due process ineluctably requires notice in all (b)(2) class actions.

We do not believe that *Mullane* over-ruled *sub silentio* the case of Hansberry v. Lee, *supra,* in which the Court was faced with the question of the res judicata effect to be given to a state class action. The Court wrote:

> It is a principle of general application . . . that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.
>
> \*   \*   \*   \*   \*   \*
>
> To these general rules there is a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a "class" or "representative" suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it.
>
> \*   \*   \*   \*   \*   \*
>
> [T]his Court is justified in saying that there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.

311 U.S. at 40–42, 61 S.Ct. at 117–118.

We believe that if there is truly adequate representation, the interests of absent parties to a (b)(2) class are protected. We thus agree with the framers of the rule,[38] several district courts that have expressly considered the question,[39] and several of the commentators[40] that notice to absent members of a (b)(2) class is not an absolute requisite of due process. For the foregoing reasons, we have concluded that there was no denial of due process in this case.

## V

Almost anticlimactically, we turn to the question of whether the district court properly granted Wetzel's and Ross' motion for summary judgment. To fully consider this question, we must review the evidence in some detail.

The Company historically had employed claims adjusters but the position of claims representatives was not created until sometime in 1965. Of the 3,129 claims adjusters hired between July 1, 1965, and March 17, 1972, only two were women; they were hired after Wetzel and Ross filed their administrative charges. During that same period, 2,329 persons were hired as claims representatives of which 2,302, or 98.84% were women. During each year between 1965–1969, an average of 1,441 adjusters worked for the Company; in none of those years were more than two adjusters women. In 1970, the number of women female adjusters increased to 5 or 0.31% of the 1,645 adjusters employed that year. In 1971, that percentage increased slightly to 2.8%.

**38.** There is a strong presumption that the rule is valid. *See* Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**39.** · Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 636 (D.Kan.1968) ("the essential requisite of due process as to absent members of the class is not notice, but the adequacy of representation of their interests by named parties"); Dolgow v. Anderson, 43 F.R.D. 472 (S.D.N.Y.1968) ("adequacy of representation, not form of notice, is the crucial consideration"); *see* Woodward v. Rogers, 344 F.Supp. 974, 980 (D.D.C.1972), aff'd, 159 U.S.App.D.C. 57, 486 F.2d 1317 (1973) ("where the adequacy of the representation of the class interests by the named parties is clear, where no apparent purpose would be served by notice to this wide-ranging class . . . and where, indeed, judgment is in favor of the class, the essential requisites of due process have been met without further notice").

**40.** *Moore, supra* ¶ 23.55; Note, Constitutional & Statutory Requirements of Notice Under Rule 23(c)(2), 10 B.C. Ind. & Comm.L.Rev. 571 (1969); Comment, Adequate Representation, Notice and the New Class Action Rule; Effectuating Remedies Provided by the Securities Laws, 116 U.Pa.L.Rev. 889 (1968).·

It does not appear that women were any less qualified to become claims adjusters than men. When the Company decided to recruit women claims adjusters in 1971, it found that of its then existing claims representative force of 600 women, approximately ⅓ were considered qualified to become claims adjusters. Approximately 10% of the claims representatives were offered and accepted the claims adjusters' position.

This statistical evidence is buttressed by additional documentary evidence. The Company's recruitment brochure describes the position of claims representative as "Fit for a Queen." In contrast, the brochures entitled "A Management Career in Liberty Mutual's Claims Department," challenge the applicant with the inquiry, "Are you the right man?"

Liberty Mutual's training manual, copyright 1970, is replete with references to pronouns of the female gender.[41]

The evidence with respect to the Company's promotion policy is just as impressive. Promotions available to female claims representatives were only to positions of supervising claims representative and claims representative supervisor. Claims adjusters, however, could be promoted to those positions and to numerous other positions which could not be achieved without first being an adjuster.

Between July 1, 1965, and January 18, 1973, the Company had not employed one woman as a branch office claims manager but had employed in the same position between 121 and 142 men annually. During the same period, no more than 9 or 1.65% of all persons employed on an annual basis as claims supervisors were women. Not one woman was promoted to claims supervisor from the ranks of claims representative between July 1965 until the end of 1969. Of the 97 persons promoted to claims supervisor in 1970, only one was a woman. Again in 1971, only one woman was promoted. This statistical evidence is also corroborated by the Company's recruiting brochures. The brochures for claims representatives describe the only advancement opportunities as supervising claims representative and claims representative supervisor. The brochure for claims adjusters refers to the glowing advancement opportunities available to the claims adjuster.

Rule 56(c) provides that summary judgment shall be granted when there is no genuine issue of material fact and when the moving party is entitled to judgment as a matter of law.[42] Rule 56(e) provides that the adverse party must by affidavit set forth specific facts demonstrating the existence of a genuine issue for trial.[43]

41. Typical are the following general instructions (emphasis supplied):

This course consists of four text books and a Form Book, plus supplementary materials, designed to help you train your new Claims Representative. The first two text books covered A, AP & SA Claims—when your C.R. finishes Books 1 and 2 *she* will be able to process an automobile claim from first report to closing. Book 3 will equip *her* to handle L & S1. cases. Book 4 will teach *her* to handle X and SX cases . . . .

\* \* \* \* \* \*

To get the most out of this training program, you should:

\* \* \* \* \* \*

b. Supply the trainee with required materials before *she* starts to work through any volume . . . . .

\* \* \* \* \* \*

e. Ask the trainee to complete the chapter on which *she* is working before going to change of pace activity.

\* \* \* \* \* \*

Use this program patiently. Let your C.R. take. within suggested limits, the time *she* needs to complete the course.

42. Rule 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. . . . .

43. Rule 56(e) provides in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule,

We are aware of the admonition that "[i]n the area of employment, with its complexities and variables, statistics must be analyzed with careful attention both to supportive and opposing facts." Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 230–231 n. 44 (5th Cir. 1974). But we also recognize the oft cited rule that "statistics often tell much and Courts listen." Alabama v. United States, 304 F.2d 583, 586 (5th Cir.), aff'd per curiam, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962). In fact, statistics are particularly appropriate in Title VII class actions where it is the aggregate effect of a company's policy on the class which is important.[44]

 Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to provide non-discriminatory reasons to rebut the prima facie case. The statistics in this case established the existence of a prima facie case of sex discrimination. The burden thereupon shifted to Liberty Mutual to establish that these statistics were misleading or to establish non-discriminatory reasons for its policies. Despite its assurances that "good and sufficient reasons for the existence of these statistics, together with a full explanation, will be offered in due course at the proper time," the district court found that Liberty Mutual's response to plaintiffs' motion "failed to address this burden at all, let alone rebut the Plaintiffs' evidence." The time for explanation has come and gone. We believe the evidence established as a matter of law the existence of sexual discrimination in violation of Title VII.

The Company also raises eight disputed issues of material fact which it claims the district court either declared immaterial or improperly resolved. We have carefully examined each and find no merit in any of them.

The judgment of the district court as to the maintenance of the class action will be affirmed. The part of its order which includes in the class past employees whose claims are time barred will be vacated. The district court's granting of summary judgment will be affirmed.

---

an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**44.** Numerous courts have relied on evidence of numerical disparity among classes of employees to prove discrimination under Title VII. *See, e. g.,* Rowe v. General Motors

Corp., 457 F.2d 348 (5th Cir. 1972); United States v. Ironworkers Local 86, 443 F.2d 544 (9th Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970); Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). Although all of these cases were decided after full trial, we see no reason why statistical evidence is less appropriate at a hearing on a motion for summary judgment.