**Donald C. SMITH, Plaintiff-Appellant,**

v.

**UNIVERSAL SERVICES, INC.,**
**Defendant-Appellee.**

**No. 71–1635.**

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1972.

On Rehearing and Rehearing En Banc
March 8, 1972.

John H. Brooks, Laborde & Brooks, New Orleans, La., for plaintiff-appellant.

J. Barnwell Phelps, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiff, a member of the Pentecostal Church, brought suit against his former employer, Universal Services, Incorporated (Universal), for alleged discriminatory employment practices under Title VII of the Civil Rights Act of 1964, Title 42, U.S.C., Sections 2000e et seq. Plaintiff alleges that his dismissal from Universal's service was arbitrary and capri-

cious and solely the result of his religious beliefs and practices. Universal contends that plaintiff was dismissed because he walked off the job.

After filing a complaint with the Equal Employment Opportunity Commission (EEOC) and receiving notices that probable cause existed for believing that he had been fired because of his religious practices and that efforts at settlement had failed, plaintiff filed the instant suit through court-appointed counsel on November 15, 1968. After testimony by witnesses for both plaintiff and Universal, the district court held that plaintiff had failed to prove his allegations. This finding was based on the court's belief that the plaintiff's testimony, which can be found to be inconsistent and confusing in many respects, was not credible. Review of the district court's findings is limited by Fed.R.Civ. P. 52(a), and this Court cannot set aside these findings unless they are clearly erroneous and supported by less than substantial evidence. Hodgson v. First Victoria National Bank, 5th Cir. 1971, 446 F.2d 47.

■ Testimony at trial revealed that plaintiff had been asked by his supervisor to cease singing religious hymns on the job. Plaintiff felt this request was a result of religious discrimination on the part of his employer; the supervisor in question testified that he gave such order only to protect plaintiff from the other employees. The district court chose to believe the supervisor. Such a credibility choice is within the discretion of the district court. Even if this finding could be shown to be clearly erroneous, however, we would not find such fact to be dispositive here. No connection was ever shown between the super-

visor's initial orders and plaintiff's eventual discharge. There was substantial evidence that plaintiff was warned that he would have to do his job more efficiently or he would be fired. At this point, plaintiff left his employment station without permission, despite the supervisor's warnings that if he did so he would be fired. The only evidence to the contrary of this state of facts was provided by plaintiff himself. The district court had the option to disbelieve his testimony and the fact that it did so can furnish no basis for an allegation of error at the appellate level.

Plaintiff next contends that the district court erred in failing to admit into evidence the EEOC's investigation report and finding of probable cause, a copy of which is attached in the Appendix to this opinion.

This is a case of first impression. Neither party has been able to cite any district or appellate case directly in point. This Court must therefore deal with the issue in accordance with analogous principles of evidence and our own concepts of equity and fairness.

The Civil Rights Act admittedly contains nothing to authorize the admission of the EEOC's findings into evidence. On the other hand, the statute does not prohibit such use of the agency's report. The statute obligates the EEOC, pursuant to a verified complaint by the aggrieved party, to investigate complaints of unlawful discrimination to determine whether probable cause exists to believe that the employer has engaged in discriminatory practices, and to eliminate any unlawful employment practice found by informal methods of conference, conciliation and persuasion.[1] If such efforts at conciliation fail, the aggrieved party

1. The statute provides, in pertinent part:
If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during*

*and as a part of such endeavors may be made public by the Commission without the written consent of the parties, or used as evidence in a subsequent proceeding.* (Emphasis added)
42 U.S.C.A. § 2000e–5(a)
It is clear from a casual reading of the statute that the emphasized portion of the statute refers only to efforts at con-

has the opportunity to file a civil suit on his own behalf against his employer for injunctive and damage relief. 42 U.S.C.A. § 2000e–5(e)–(g).

There are two primary objections raised to the introduction of the investigation report into evidence during subsequent civil litigation. First it is contended that the report is immaterial and prejudicial to defendant's case.

It is not to be denied that under Title VII, the action of the EEOC is not agency action of a quasi-judicial nature which determines the rights of the parties subject only to the possibility that the reviewing courts might conclude that the EEOC's actions are arbitrary, capricious or an abuse of discretion. Instead, the civil litigation at the district court level clearly takes on the character of a trial de novo, completely separate from the actions of the EEOC. United States v. H. K. Porter Company, N.D.Ala.1968, 296 F.Supp. 40; King v. Georgia Power Co., *supra.* It is thus clear that the report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.

This is not to say, however, that the report is inadmissible. A trial de novo is not to be considered a trial in a vacuum. To the contrary, the district court is obligated to hear evidence of whatever nature which tends to throw factual light on the controversy and ease its fact-finding burden.

The Commission's decision contains findings of fact made from accounts by different witnesses, subjective comment on the credibility of these witnesses, and reaches the conclusion that there is reasonable cause to believe that a violation of the Civil Rights Act has occurred. Certainly these are determinations that are to be made by the district court in a de novo proceeding. We think, however, that to ignore the manpower and resources expended on the EEOC in-

vestigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary.

The fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred, is highly probative of the ultimate issue involved in such cases. Its probative value, we believe, at least outweighs any possible prejudice to defendant. "Prejudicial" cannot be equated with "harmful" in all cases; rather it connotes "harmful," plus "non-probative." Fullerton v. Monongahela Connecting Railroad Co., D. Pa.1965, 240 F.Supp. 472; Petroleum Carrier Corporation v. Snyder, 5th Cir. 1947, 161 F.2d 323; Prudential Insurance Company v. Faulkner, 10th Cir. 1934, 68 F.2d 676, 31A C.J.S. Evidence § 159, p. 432 (1964); McCormick, Evidence §§ 151–52 (1954).

Secondly, Universal argues that the report is hearsay evidence and inadmissible for this reason. Plaintiff, admitting its hearsay character, would have us admit the report as a business record pursuant to the Federal Business Records Act, 28 U.S.C.A. § 1732. *See* Gillin v. Federal Paper Board Company, 2 FEP 507, 62 L.C. 6663 (D.Conn.1970). We agree that the investigation report is admissible as an exception to the hearsay rule under the federal statute.

We think that the EEOC report, consisting of a summary of the charges, a brief review of the facts developed in its investigation, and its finding of probable cause that violations exist, can be found to be analogous to accident reports admissible under the Federal Business Records Act. It is not denied that the report was prepared in the regular course of the Commission's business and in accordance with express statutory authority. 42 U.S.C.A. § 2000e–5

ciliation of the EEOC and has no application to the agency's investigation or findings of probable cause. *See* King

v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968).

(e). The regularity with which such reports are made does not, however, by itself, require admissibility. It must first appear that the reports are required "for the systematic conduct of the business as a business." Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

In Puggioni v. Luckenbach Steamship Company, 2d Cir. 1961, 286 F.2d 340, the Court stated:

Although accident reports should not be admitted when the party making the report offers it for the purpose of its own exoneration from liability . . . this circuit has . . . give[n] trial judges discretion to determine whether the circumstances surrounding accident reports made by others justify their acceptance in evidence. . . . The Federal Business Records Act should not be interpreted in a "dryly technical" way which would "reduce sharply its . . . usefulness."

286 F.2d at 344.

*See also* Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Bowman v. Kaufman, 2d Cir. 1967, 387 F.2d 582; Hawkins v. Gorea Motor Express, Incorporated, 2d Cir. 1966, 360 F.2d 933; McKee v. Jamestown Baking Company, 3 Cir. 1952, 198 F.2d 551.

As long as this type of investigation is not self-serving nor compiled for purposes of litigation only, it is thus admissible. Vaccaro v. Alcoa Steamship Company, 2d Cir. 1968, 405 F.2d 1133; Pekelis v. Transcontinental & Western Air, 2d Cir. 1951, 187 F.2d 122, cert. den.

341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951).

The report involved in the instant case was prepared by an investigator for the EEOC, pursuant to its statutory mandate, and was not prepared in anticipation of litigation. The Commission is not a party to the litigation and can have no interest therein. The investigator had no personal involvement in the situation. There is no reason to suspect any lack of trustworthiness. All of the requirements for admissibility under Title 28, U.S.C. A., Section 1732 are, therefore, met. The district court erred when it chose to ignore the report for purposes of its fact-finding function.[2]

The judgment of the district court is, therefore, vacated and the cause is remanded for the district court to reconsider its judgment after considering the contents of the EEOC investigation report in accordance with this opinion.

### APPENDIX

(EMBLEM)

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### WASHINGTON, D.C. 20506

Donald C. Smith     Case No. NO7–2–256
    Charging Party
    vs.
Universal Services Incorporated
Southeastern Division
New Orleans, Louisiana
    Respondent

Date of alleged violation:
    February 20, 1967
Date of filing: February 28, 1967
Date of service of charge: June 26, 1967

---

2. We find no validity in the objection that the report contains opinions of the investigator, finding the report to be analogous to opinions of physicians and coroners regarding matters within their expert competency held admissible as business entries. Medina v. Erickson, 9th Cir. 1955, 226 F.2d 475, cert. den. 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446; Ostrov v. Metropolitan Life Ins. Co., D.C.Pa.1966, 260 F.Supp. 152.

Likewise, it is irrelevant for purposes of admissibility that the report was derived in part not from the personal observation of the investigator, but from information supplied by persons under no business duty to report and self-serving declarations of plaintiff. Moran v. Pittsburg-Des Moines Steel Co., 3d Cir. 1950, 183 F.2d 467; White v. Zutell, 2d Cir. 1959, 263 F.2d 613; Terrasi v. South Atlantic Lines, 2d Cir. 1955, 226 F. 2d 823, cert. den. 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 855; Gaussen v. United Fruit Co., 2d Cir. 1969, 412 F.2d 72. Conclusions of experts may be based on

## DECISION

### SUMMARY OF CHARGES

The Charging Party alleges that Respondent engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964 in that Respondent terminated him from employment because of his religious affiliation (Pentecostal).

### SUMMARY OF INVESTIGATION

The Respondent Company is engaged in the business of food service, catering, and housekeeping, primarily for off-shore and on-shore businesses. Respondent's Southeastern Division employs over 200 persons.

The Charging Party began working for the Respondent on July 1, 1966. During the first week of December, 1966, the Charging Party began working on an oil rig located near Venice, Louisiana.

Approximately one week after the Charging Party began working, some of the oil rig members began asking the Charging Party about his religion. The Charging Party is a member of the Pentecostal Church. The Charging Party's chief steward in charge of the oil rig overheard the men's conversation, and, as a result, took the Charging Party aside and asked that he refrain from discussing his religion. It should be noted that the chief steward is of a different religious persuasion.

It appears from the investigation that it is often customary for men on oil rigs to sing softly to themselves. The Charging Party states that he often sang words such as "hallelujah, glory, glory, hallelujah," and "Praise Jesus" to himself.

Approximately two weeks after the Charging Party's first encounter with the chief steward, again some of the Charging Party's fellow employees were questioning him concerning his religion and

the words he sang. On this occasion, the chief steward in the presence of the other men warned the Charging Party to refrain from singing his religious songs and from discussing his religion.

The Charging Party states that this episode was one of several of a similar nature that he had with the chief steward over the next couple of months. Furthermore, he states that any time the chief steward came around him, he became extremely agitated and could not perform his work as capably as was possible. On February 20, 1967, the Charging Party states that he became so upset at the chief steward's treatment that he could no longer tolerate it, and he left the oil rig in order to speak to a superior supervisor in hopes of resolving the problem.

The chief steward states that he asked the Charging Party to refrain from singing and discussing religion for his own protection. The chief steward contends that the Charging Party upset the other men on the oil rig in that he predicted that the helicopter which ferried the men to the shore and back would crash and he, the Charging Party, would be the only survivor. In addition, the chief steward alleges that the Charging Party stated that he had cursed the rig so it would blow up and/or burn.

The chief steward could specifically name only two men whom he alleged were upset by the Charging Party's religious comments and songs. When these two men were contacted by the investigator in the case, neither could remember having been disturbed in any way by the Charging Party.

The chief steward denies that he discharged the Charging Party because of his religion, but rather because the Charging Party walked off the job. The evidence obtained in the investigation does not lend support to the chief steward's contentions.

hearsay evidence as well as upon observation. Pekelis v. Transcontinental & Western Air, 2d Cir. 1951, 187 F.2d 122, cert. den., 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951).

Both of these objections go to the weight to be given the report and do not affect its admissibility.

DECISION

Reasonable cause exists to believe that the Respondent has violated Sections 703 (a) (1) and (2) in that one of its chief stewards caused the Charging Party to be discharged from his employment because of his religion (Pentecostal).

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

DYER, Circuit Judge, with whom GEWIN, BELL, COLEMAN, SIMPSON and RONEY, Circuit Judges, join, dissenting:

I respectfully dissent from the denial of the Court to consider this case *en banc*. As I read the opinion the "expert" testimony in the EEOC report coupled with its characteristics as a business record produces a synergy that somehow makes the whole package admissible.

The opinion instructs the district court that it is obligated to hear evidence of *whatever nature* that is probative. Not only do I disagree with the breadth of this pronouncement but it would seem clear that this type of evidence is not categorically "probative." As the opinion points out, the EEOC report "contains findings of fact made from different witnesses, subjective comment on the credibility of these witnesses and reaches [a] conclusion."

The credibility of witnesses has historically been the sole function of the fact finder. An opinion concerning credibility by a so-called expert would be superfluous and inadmissible. 7 Wigmore, Evidence § 1918 (1940). McCormick, Evidence § 12 (1954); Note, Revised Business Entry Statutes: Theory and Practice, 48 Colum.L.Rev. 920, 930 (1948). The judge, as the fact finder in a Title VII suit, is hopefully more of an expert on the credibility of witnesses than is an EEOC investigator.

It is, of course, also within the district court's sound discretion whether to accept an EEOC investigator as an expert witness. *See* Dyas v. Kansas City Southern Ry. Co., 5 Cir. 1970, 425 F.2d 1073, 1074; Southern Cement Co. v. Sproul, 5 Cir. 1967, 378 F.2d 48, 49–50; Langham, Langston & Burnett v. Blanchard, 5 Cir. 1957, 246 F.2d 529, 533–34; 2 Wigmore, Evidence § 561 (1940). While an investigator may be an expert in some areas, I cannot conceive how it can be clearly erroneous for a district court to reject his expertise concerning the credibility of witnesses.

In addition to its very questionable probative value, EEOC reports may be prejudicial, irrelevant, and unreliable. King v. Georgia Power Co., N.D.Ga.1968, 295 F.Supp. 943, 949;[1] Moss v. Lane Co., W.D.Va.1970, 50 F.R.D. 122, 127; Hyatt v. United Aircraft Corp., D.Conn. 1970, 50 F.R.D. 242, 246 n. 4; Gillin v.

---

1. The panel opinion, in a footnote, cites the *King* case for the statutory interpretation that 42 U.S.C.A. § 200e–5(a) prohibits only the use of anything done with respect to conciliation efforts. Beverly v. Lone Star Lead Const. Corp., 5 Cir. 1971, 437 F.2d 1136, 1142 n. 29 cites the King case but does not restrict the inadmissibility of evidence brought before the Commission to the conciliation conference.

Federal Paper Board Co., D.Conn.1970, 52 F.R.D. 383, 385; Hart v. Buckeye Industries, Inc., S.D.Ga.1968, 46 F.R.D. 61, 62–63.

Turning to the holding that the investigator's report is an exception to the hearsay rule under the Federal Business Records Act, 28 U.S.C.A. § 1732, Judge Thornberry succinctly pointed out in Sabatino v. Curtiss National Bank of Miami Springs, 5 Cir. 1969, 415 F.2d 632, 637, cert. denied, 1970, 396 U.S. 1057, 90 S.Ct. 750, 24 L.Ed.2d 752 that, " . . . the main reason for the statutory language 'in regular course of any business' is to provide a check on trustworthiness, in that (1) the records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) *they must not themselves be mere cumulations of hearsay or uninformed opinion.*" (emphasis supplied).

It is undisputed that the EEOC report is merely a cumulation of hearsay and contains the opinion of the investigator based upon his credibility choices with respect to the hearsay. Furthermore, it is naive to say that it was not prepared for purposes of litigation when the report reaches the conclusion that there is a reasonable cause to believe that a violation of the Civil Rights Act has occurred. All of this underscores the report's unreliability and lack of trustworthiness. *See* McCormick, Evidence § 294 (1954).

If we approve this type of hearsay and business record exception, we are establishing a poor precedent that can be equably applied to any other governmental investigative agency. The EEOC investigator is no more, and perhaps

much less, of an expert with respect to his investigation than is the IRS or FBI agent. I oppose such a new broad rule of admissibility.