James HEARD, Plaintiff-Appellant,

v.

The MUELLER COMPANY, Defendant-Appellee,
and
United Steelworkers of America, AFL-CIO, Intervening Defendant-Appellee.

No. 72-1189.

United States Court of Appeals, Sixth Circuit.

July 14, 1972.

---

·Phillip A. Fleissner, Chattanooga, Tenn., for plaintiff-appellant; Sizer Chambliss, Chattanooga, Tenn., on brief.

William D. Spears, Chattanooga, Tenn., for Mueller Co.; W. Ferber Tracy, Spears, Moore, Rebman & Williams, Chattanooga, Tenn., on brief.

John C. Falkenberry, Birmingham, Ala., for United Steelworkers; Bernard

Kleiman, Chicago, Ill., Michael H. Gottesman, Bredhoff, Barr, Gottesman, Cohen & Peer, Washington, D. C., Benj. L. Erdreich, John C. Falkenberry, Cooper, Mitch & Crawford, Birmingham, Ala., on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

This is a Civil Rights action in which the Negro plaintiff-appellant alleged that his former employer,[1] the Mueller Company, denied him promotional opportunities by maintaining a departmental seniority system which perpetuates the effects of historic or traditional racial discrimination. This departmental seniority system was established by the collective bargaining agreement between the Company and the United Steelworkers Union. Under it each department within the Company maintains its own seniority system for the purpose of determining promotions and layoffs (vacations and other benefits are determined by company seniority). When an employee transfers from one department to another, he enters the new department at the bottom of the seniority scale. When an opening occurs in any department, that opening is filled by the employee in that department with the highest seniority who applies; there is no contention that race or any factor other than departmental seniority is used to determine who will fill these vacancies. The appellant contends that this system has acted to discourage an employee from transferring to another department and thereby has effectively frozen most of the black employees in the foundry department, perpetuating the results of former discriminatory hiring practices.

At trial, the appellant relied primarily upon statistical evidence of the racial composition of the Mueller work force. This evidence shows that:

"Mueller employs at its facility in Chattanooga, Tennessee, approximately 950 workers, 55% of which are black persons. Almost all of such employees are members of one trade union or another. 514 of the employees of this plant work in its foundry, assembly and shipping departments. 78.4% of this number in these departments are black persons. About 90% of the workers in the foundry department, including core-room and cleaning-room units, are black persons and about 75% of the foremen therein are white persons. Some 65% of the employees of the assembly department are black persons, and there has never been in recent times more than one black person employed as a foreman in this department. Of the 243 employees in the machine shop of the facility, 48 are black persons. 95% of the patternmakers, expediters and clerks in the facility are white persons. Executive and supervisory personnel of Mueller seek actively to employ black persons in every type of job in every department in its Chattanooga facility." (Memorandum Opinion of the District Court.)

The appellant was first employed at Mueller Company in 1959 as a "chipper and grinder" in the foundry department, one of three departments within the Steelworkers bargaining unit. In 1968 he filed a charge against his employer with the EEOC, claiming that he was unfairly denied a patternmaker vacancy for which he and 154 other employees had applied. Subsequently, he filed this civil action against the company, in which the United Steelworkers was permitted to intervene. The District Court granted summary judgment for the Company on the issue of whether the appellant had been wrongfully denied the patternmaker vacancy because the EEOC

---

1. The appellant was employed at the Mueller Company at the time the suit was instituted. He was subsequently discharged; the lawfulness of that discharge is not at issue in this suit.

charge was filed more than 90 days after the alleged violation of the Act, and the appellant does not appeal from that portion of the District Court's order. Because the complaint also alleged violations of a continuing nature, the Court refused to dismiss those allegations of the complaint, and a trial to the Court was had on these issues. At the close of all evidence, the Court granted judgment for the Company, and the appellant has perfected this appeal from that judgment.

■ The appellant's contention at trial was that the departmental seniority. system serves to preserve the consequences of past or traditional racial discrimination. On this appeal, he contends that his statistical evidence created a prima facie case of a continuous policy of racial discrimination and that the burden of proof therefore devolved upon the defendants to refute his statistical evidence. We disagree. Had the District Court granted a motion for a directed verdict at the close of appellant's case, we might be inclined to agree with the appellant on the basis of Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972) (4 FEP Cases ¶ 7689) and United States v. Hayes International Corp., 456 F.2d 112 (5th Cir. 1972) (4 FEP Cases 411). That, however, is not the case, and we think that the appellant has misconstrued the determination of the District Court. The Court found that there was "no preponderate evidence" of a violation of the Act, or, in other words, that the appellant failed to show by a preponderance of the evidence that there was a violation of the Civil Rights Act of 1964. In reaching this conclusion, the Court evaluated the evidence presented by the appellant, including the statistical evidence, and the evidence offered by the defendant Company and by the intervening Union as to past and present employment practices. On the basis of this evidence the Court concluded that no continuous policy of discrimination against Negro employees, or prospective

employees had been shown. The statistical evidence upon which the appellant rests shows, inter alia, that Negroes hold jobs at every classification and skill level in each of the three Steelworker departments.

All departments have all skill levels, and blacks appear in each of them. While there is a lack of black employees in some foreman jobs, that position is a salaried management position and is outside the purview of the bargaining agreement, and therefore was not in issue in this proceeding.

■ The appellant seems to contend that any departmental seniority system is per se illegal and a violation of Title VII. That is not the case. Under the Civil Rights Act of 1964, the Federal Courts have consistently held that seniority provisions are illegal only if they tend to "freeze" or perpetuate the effects of historic or traditional discrimination in hiring or in promotion. E. g.: Bailey v. American Tobacco Company, 462 F.2d 160 (6th Cir. 1972), Quarles v. Phillip Morris, Inc., 279 F. Supp. 505, 517–520 (E.D.Va.1968). The record shows that the appellant failed to establish that "locking" exists within the three departments involved in this suit. In addition, the appellant failed to establish sufficient evidence concerning the past or traditional discrimination which the present system is alleged to have perpetrated.

■ We agree with the appellant that if the departmental seniority system were · operating as contended, the fact that the system was established in the collective bargaining agreement would not preclude the relief which he seeks. However, we cannot say on the basis of the record before us that the District Court's finding that the departmental seniority system in question is non-discriminatory is clearly erroneous.

This action was instituted as an individual action; eleven months later, the appellant made a motion to amend his complaint to allege with greater particularity the fact that he wished this action

to proceed as a class action. In its memorandum opinion, the District Court did not rule upon this motion other than to state that it deemed all outstanding motions moot. The appellant has appealed from that ruling.

In deeming the motion moot, the District Court was apparently relying upon the fact that the appellant, at the time of the filing of the motion, was no longer an employee of the Mueller Company nor a member of the Steelworker bargaining unit, and therefore was not a proper representative of the class of affected employees which he sought to represent. The appellant does not complain of his discharge, nor does he seek reinstatement. The Fifth Circuit has recently held that a discharged employee who is not entitled to reinstatement and who had no prospect of returning to work there was not a proper representative of the class of black employees or prospective employees of that company. Huff v. N.D. Cass Co., 468 F.2d 172 (5th Cir. 1972). We agree with the Fifth Circuit that:

> "If we were to remand the case to the District Court to allow [the appellant] to lead an action on behalf of a class of which he was not a member we would sanction a 'sham' class action. This would not only destroy the dignity which has distinguished this type of action but it would likewise destroy the true role of the class action plaintiff." Huff v. N.D. Cass Co., supra, at 179.

Finally, the appellant appeals from the ruling of the Court excluding from evidence a Final Investigation Report of the EEOC which the appellant claims contains valuable statistical evidence about the patterns of discrimination at the Company. Since it is within the sound discretion of the District Court whether to accept an EEOC investigator as an expert witness, Bridger v. Union Ry. Co., 335 F.2d 382, 387 (6th Cir. 1966), it would seem to be within the same discretion whether or not to accept the EEOC's final investigation report. Gillin v. Federal Paper Board Co., 52 F.R.D. 383 (D.C.Conn.1970).

The EEOC report pertained to the appellant's complaint concerning his being denied the patternmaker vacancy. The Court granted summary judgment for the Company on that issue, and the trial proceeded upon the remaining issues of continuing company discrimination. The contents of the EEOC report were not, therefore, directly relevant to the controversy before the Court. In this respect this case differs from Smith v. Universal Services, Inc., 454 F.2d 154 (5th Cir. 1972), where the Report was found to be highly probative of the ultimate issues involved. 454 F.2d at 157. Certainly, on the basis of the case before us, we are not prepared to hold that all EEOC Investigation reports are *per se* admissible in every Title VII action involving some or all of the same parties. To the extent that the *Smith* case can be read to adopt such a holding, we respectfully decline to adopt that position. *See*: Smith v. Universal Services, Inc., supra, at 160–161 (dissenting opinion).

The judgment of the District Court is affirmed.