805 F.2d 1035
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James MacLEOD, Plaintiff-Appellee,
v.
AMERICAN SYNTHETIC RUBBER CORPORATION, Defendant-Appellant.
 Nos. 85-5746-5775.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1986.
 
 Before LIVELY, Chief Judge, and WELLFORD and BOGGS, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Defendant employer American Synthetic Rubber Corporation ("ASRC") and plaintiff employee James R. MacLeod both appeal from a judgment of the district court entered on a jury verdict in this claim and controversy arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq.
 
 
 2
 On May 2, 1981, ASRC terminated James R. MacLeod's employment during a reduction in force brought about by economic conditions. After being told that he would be terminated, MacLeod filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC). He followed the prescribed procedure before the timely filing of this action in district court, alleging that he was terminated because of his age in violation of the ADEA. The district court denied ASRC's motions for a directed verdict at the close of MacLeod's case and at the end of the trial. The jury returned a verdict in MacLeod's favor and awarded him $44,553 in damages, and the district court entered judgment in the amount of $51,397.16, including liquidated damages and attorney fees. Furthermore it ordered MacLeod reinstated.[1] ASRC moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial, which motions the district court denied. On ASRC's motion and despite MacLeod's objection, however, the district court entered another order suspending the prior order of reinstatement. Both ASRC and MacLeod now appeal, the latter with respect to the amount of damages. MacLeod does not appeal the decision not to reinstate him.
 
 
 3
 At the time of his termination, MacLeod was 52 years old and had been employed by ASRC for approximately 18 years. He had previously worked at Reynolds Metal Company as a foreman responsible for its anodizing department. At ASRC, MacLeod served first as an assistant foreman and was then promoted to shift foreman, supervising as many as 60 people for a number of years. MacLeod testified essentially without contradiction that he never had any disciplinary problems during his service with ASRC.
 
 
 4
 During a 1972 strike, MacLeod injured his ankle while working with other supervisory personnel to operate the ASRC plant. He subsequently wore a brace, but he continued to attempt to perform the foreman's job for approximately one year. Thereafter he requested a transfer to ASRC's laboratory, and in 1974 that request was granted. MacLeod was a Chem Tech I and worked in this laboratory classification until terminated. As a Chem Tech I, he supervised three hourly workers and did routine work, following established procedures; his duties did not change. The higher classification, Chem Tech II, involved performance of more complicated, less routine tasks, with less supervision.
 
 
 5
 On his 1980 annual employment appraisal form, MacLeod was rated "fully competent" and was recommended for a raise and a promotion to the position of production supervisor. MacLeod testified that he had sought out a potential foreman's job after this recommendation and before the reduction in force was announced by ASRC.
 
 
 6
 In 1980, when ASRC decided to cease production of one of its major product lines (styrene butadiene rubber), significant changes were brought about in the staffing needs of the Technical Department, including the laboratory. Dr. Trott, who was responsible for Technical Department staffing, recommended to ASRC president Dodrill that, because the company's only remaining major product was chemically more complex than styrene butadiene rubber and thus more sophisticated testing was required, laboratory personnel with more substantial chemistry backgrounds were needed. Dr. Trott decided to retain persons with chemistry degrees, or those who had almost completed their degree work; in short, only those already performing at the Chem Tech II level.
 
 
 7
 Dr. Trott then asked MacLeod's supervisor to rank eleven laboratory employees with respect to ability to perform the Chem Tech II job. MacLeod was ranked at the bottom of the list, along with another worker, 34 years old, who was also terminated with MacLeod in May 1981. Since MacLeod was found no longer qualified to remain in the Technical Department, his name, along with similarly situated employees from other departments, was placed in a pool of employees tentatively scheduled for termination. ASRC reviewed all the employees in this pool, including MacLeod, to determine which individuals should be retained in departments other than their former ones. Two other Technical Department employees were in this pool, together with three surplus production foremen, ages 39, 41, and 39, respectively, deemed to be the poorest performers among active production foremen. The work records of these three, Wiley, Jolly, and Sweeney, were mediocre.
 
 
 8
 At the time of the reduction in force, there were several security guards who had limited experience with ASRC. After some internal discussion, it was decided that these security guards would be terminated and replaced with production foremen, so that a pool of trained foremen would be available from which replacements could be drawn. Wiley, Jolly, and Sweeney were retained as security guards, despite MacLeod's specific request to be transferred to one of these positions. Erwin Wall, who was then ASRC Director of Employee Relations, told MacLeod that he was not qualified for any job in the plant at the time of termination. At that time MacLeod's considerable prior work history and abilities were unknown to Wall who was new in the position and had no previous experience or training in personnel or labor relations.
 
 
 9
 William Doyle, a longtime ASRC employee who had worked in labor relations since 1972, testified that Wall indicated that his job involving reduction in force of salaried personnel was to reduce the average age in the plant and thus lower pension and insurance costs. Wall and Doyle both testified that they had considerable discussion about this reduction in force for months prior to its implementation. Doyle, who was also terminated, further testified that plant manager Donald Schmidt specifically rejected MacLeod for a security guard position because, among other cited reasons, "[h]e had to have younger foremen in his ranks."
 
 
 10
 Doyle attended a series of meetings concerning the 1981 reduction in force, including a meeting of Company officers with ASRC's board of directors. At that meeting, one of the directors interrupted Wall's presentation concerning the criteria to be used for the reduction in force and their relation to the firm's non-discrimination policy, stating: "[G]et rid of the people you want to get rid of? ... We'll worry about EEOC later." The district court, however, excluded this testimony over plaintiff's objection. Also, despite Doyle's role in personnel and as the one responsible for EEOC compliance, he was not allowed to testify at trial regarding his opinion as to whether age was a factor in MacLeod's termination.
 
 
 11
 Defendant ASRC first argues on appeal that the district court erred in denying ASRC's motion for a directed verdict on the ground that MacLeod neither established a prima facie case of age discrimination nor carried his ultimate burden of proof.
 
 
 12
 Although the precise elements of a prima facie case of age discrimination in a reduction in force context are not altogether clear, significantly more than "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity" is required. LaGrant v. Gulf & Western Manufacturing Co., 748 F.2d 1087, 1090 (6th Cir.1984); see also Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980).
 
 
 13
 Generally an ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons. To meet his ultimate burden of demonstrating that he was a victim of age discrimination, the plaintiff, in addition to proving that he fell within the protected class, that he was terminated and that he was replaced by a younger individual, must come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination. See, e.g., LaGrant v. Gulf & Western Manufacturing Co., Inc., 748 F.2d 1087 (6th Cir.1984).
 
 
 14
 Ridenour v. The Lawson Company, 791 F.2d 52, 57 (6th Cir.1986) (footnote omitted). Ridenour is not to be read to require that a plaintiff in a reduction-in-force age discrimination case must prove replacement by a younger person; instead, as in LaGrant, it requires more than mere termination of a protected, qualified worker.
 
 
 15
 ASRC argues that MacLeod was not qualified at the time of discharge to assume another job for which he could be retained after the reduction in force.[2] Only three job positions appear to be in dispute: Chem Tech I, Chem Tech II, and security guard.
 
 
 16
 ASRC contends that the position of Chem Tech I was "abolished ... as a permanent classification" and the record clearly supports this. This was not a position in which plaintiff could have been retained, and there is no real issue about this.
 
 
 17
 ASRC notes its increased emphasis, after the reduction in force, on an academic background in chemistry for the Chem Tech II position. MacLeod does not contest this point in his brief. Thus, ASRC did not discriminate against MacLeod with respect to the laboratory position. The sole question relates to the security guard position.
 
 
 18
 ASRC argues that MacLeod was unqualified for this position. A factual issue was presented in this case, then, concerning the selection of Wiley, Jolly, and Sweeney (all of whom were significantly younger than MacLeod) for the security guard positions instead of MacLeod. In view of MacLeod's past unblemished record as a production foreman and a recommendation for his promotion in 1980, in comparison to the records of Wiley, Jolly, and Sweeney, a question for resolution under ADEA was presented whether MacLeod was qualified for one of these slots filled by the younger men with, at best, mediocre records.
 
 
 19
 ASRC also argues, citing Ridenour v. The Lawson Company, 791 F.2d at 57, that MacLeod failed to produce "additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination." ASRC first argues that Doyle's testimony concerning plant manager Schmidt's assertion that, "as far as the gatehouse, ... [h]e [Schmidt] had to have younger foremen in his ranks," is insufficient to support an inference of age discrimination. Schmidt's comments, however, directly evidence an intent to choose younger foremen to staff the security guard positions, or they may be so interpreted by the trier of fact. Even if Schmidt and not Wall made the decision not to retain MacLeod, the circumstances warrant a jury decision and indicate that plaintiff made out a prima facie case of age discrimination.
 
 
 20
 Doyle testified that Wall's purported purpose in coming to the personnel department was to reduce the age of ASRC's work force. ARC responds that, if this were Wall's purpose, he failed to achieve his end, based on statistical data of record. This is evidence in rebuttal of plaintiff's prima facie case. Second, ASRC also emphasizes that there was no evidence that Wall himself was involved in the decision to terminate MacLeod. We are persuaded after reviewing the record that a reasonable jury could conclude Wall was involved in the decision to terminate MacLeod. Wall's statement was clearly relevant and may have been taken into account in determining whether plaintiff carried his burden initially of submitting the case to a jury. We conclude, therefore, that this case was properly presented to the jury to determine (1) whether or not MacLeod was qualified for the security guard post, and (2) whether there was an intent to replace older persons in the protected class with younger persons.
 
 
 21
 In summary, plaintiff presented relevant evidence that a reasonable jury might find:
 
 
 22
 1. MacLeod was within the protected age group, was qualified for his job, and was discharged, while three younger men qualified as production foremen were retained.
 
 
 23
 2. MacLeod possessed qualifications for the newly-created security guard position (as a pool of production foremen).
 
 
 24
 3. Schmidt desired younger foremen rather than the older MacLeod.
 
 
 25
 4. Wall purposely attempted to reduce the average age of the work force.
 
 
 26
 The above summary and analysis of the evidence applies equally to ASRC's motion notwithstanding the verdict. While undoubtedly the case is a close one as to whether intentional age discrimination occurred, we find sufficient evidence to make out a jury question, for the reasons set out above. Our role is not to recast and to reconsider the evidence to justify a different result even if we were to disagree with the jury's determination in this difficult fact controversy.
 
 
 27
 We find no basis for concluding that the district court's denial of a new trial constituted an abuse of discretion. As in the case of its motion for a directed verdict and for a judgment notwithstanding the jury's verdict, ASRC has failed to persuade us on this point.
 
 
 28
 ASRC also claims error in the exclusion from evidence of a determination by the Kentucky Commission on Human Rights that no probable cause existed to believe that MacLeod was discriminated against due to his age. In this contention, ASRC relies primarily upon Smith v. Universal Services, Inc., 454 F.2d 154, 156-58 (5th Cir.1972). Only one other circuit has adopted the Smith rule that such a letter should be admissible. See Bradshaw v. Zoological Society, 569 F.2d 1066, 1069 (9th Cir.1978). Although "[a] majority of district courts, at least in recent years, has allowed the determination to be received in evidence ...," the admissibility of such EEOC determinations "is usually left to the discretion of the trial court." B. Schlei & P. Grossman, Employment Discrimination Law 977 (2d ed. 1983 & Supp.1985). We agree that admitting or excluding this evidence is properly based upon the trial court's sound discretion, depending upon the totality of the circumstances in a particular case.
 
 
 29
 In Heard v. The Mueller Company, 464 F.2d 190, 194 (6th Cir.1972), we declined to reverse the district court's exclusion from evidence of "a Final Investigation Report of the EEOC which the appellant claims contains valuable statistical evidence about the patterns of discrimination at the Company." We explained the rationale for such rule:
 
 
 30
 Since it is within the sound discretion of the District Court whether to accept an EEOC investigator as an expert witness, Bridger v. Union Ry. Co., 335 F.2d 382, 387 (6th Cir.1966), it would seem to be within the same discretion whether or not to accept the EEOC's final investigation report. Gillin v. Federal Paper Board Co., 52 F.R.D. 383 (D.C.Conn.1970).
 
 
 31
 The EEOC report pertained to the appellant's complaint concerning his being denied the patternmaker vacancy. The Court granted summary judgment for the Company on that issue, and the trial proceeded upon the remaining issues of continuing company discrimination. The contents of the EEOC report were not, therefore, directly relevant to the controversy before the Court. In this respect this case differs from Smith v. Universal Services, Inc., 454 F.2d 154 (5th Cir.1972), where the Report was found to be highly probative of the ultimate issues involved. 454 F.2d at 157. Certainly, on the basis of the case before us, we are not prepared to hold that all EEOC Investigation reports are per se admissible in every Title VII action involving some or all of the same parties. To the extent that the Smith case can be read to adopt such a holding, we respectfully decline to adopt that position. See: Smith v. Universal Services, Inc., supra, at 160-161 (dissenting opinion).
 
 
 32
 Heard, 464 F.2d at 194. Heard has been interpreted, moreover, to align this court with the majority who have decided this issue. See Weems v. Ball Metal and Chemical Division, Inc., 753 F.2d 527, 528 n. 1 (6th Cir.1985) (EEOC "no reasonable cause" letter, "in the sound discretion of the trial court, may be admitted in evidence. Heard v. The Mueller Co., 464 F.2d 190, 194 (6th Cir.1972)."). In Harden v. Dayton Human Rehabilitation Center, 520 F.Supp. 769, 772-74 (S.D.Ohio 1981), aff'd, 779 F.2d 50 (6th Cir.1985), Judge Rice applied Heard in his review of a magistrate's exclusion of a report of the Ohio Civil Rights Commission. The Kentucky Commission letter here was a mere summary, a form dismissal of MacLeod's charges. We find no abuse of discretion in its exclusion.
 
 
 33
 The jury's verdict on special interrogatories found as damages:
 
 
 34
 Backpay less severance pay $21,888.58
Reduced pension benefits 6,797.00
Purchase price of comparable
life insurance 1,059.00
Medical expenses incurred from
date of termination
to date 823.00
Cost of future medical
insurance coverage 13,985.42
 ----------
TOTAL: $44,553.00
 
 
 35
 The district court awarded $21,888.58 as liquidated damages, but MacLeod argues that the district court erred in not including an additional $6,797 in its calculation, citing Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.1983). We are not persuaded by MacLeod in this respect; Rose does not address the proper elements of liquidated damages.
 
 
 36
 Finally, MacLeod also asserts as error the district court's refusal to tax as costs against ASRC the actual expert witness fee of an actuary who testified for MacLeod. Again, we find no abuse of discretion.
 
 
 37
 We accordingly AFFIRM the judgment of the district court in all particulars.
 
 
 38
 Under a McDonell-Douglas-type analysis, it is clear that MacLeod has raised a prima facie case, and that defendants have not only articulated but strongly substantiated a legitimate, non-discriminatory reason for MacLeod's discharge. Thus, the resulting question is whether MacLeod has raised sufficient evidence of pretext to go to the jury. In the context of the evidence in this case, MacLeod's claim of pretext is essentially supported only by the remark attributed to Schmidt that he wanted to have younger foremen; I do not believe that that is sufficient evidence to support a reasonable jury in finding pretext. Under these circumstances, I do not believe a motion for directed verdict can be resisted, because any inference that MacLeod was discriminated against because of his age would be based merely upon a scrap of testimony by Wall not relevant to the decision-making process, or upon an unguarded comment that does little to offset the clear evidence as to what actually happened.
 
 
 
 [1]
 During the course of the litigation the Kentucky Commission on Human Rights issued a "no probable cause" letter to MacLeod on August 7, 1984, dismissing MacLeod's complaint "with a finding of no probable cause to substantiate the Complainant's allegations of discrimination." (Citing Ky.Rev.Stat. Sec. 344.200(2))
 
 
 [2]
 ASRC contends, relying on Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir.1981), cert. denied, 455 U.S. 943 (1982), that the appropriate modified McDonnell Douglas criteria are met in a reduction in force case by proof that (1) plaintiff was a member of the protected group (i.e., 40 to 70 years old); (2) plaintiff was discharged; (3) plaintiff was qualified for the position he held; and (4) plaintiff was qualified to assume a position that survived the reduction in force. ASRC maintains that MacLeod fails to meet the fourth criterion