**Emma OLSON, Plaintiff,**

v.

**LARGO–SPRINGHILL LIMITED PARTNERSHIP, Defendant.**

**Civil Action No. MJG–93–3808.**

United States District Court, D. Maryland.

Feb. 7, 1995.

time that month, Mr. Walsh telephoned Petrie, Dierman, Kughn (hereinafter referred to as "PDK"), the landlord of Largo Town Center, and inquired whether there was any retail space available for lease. Ms. Karin Pittenger, the PDK leasing agent, informed Mr. Walsh that there was space available and that Plaintiff would need to submit a standard lease package, which consisted of a financial statement, a business plan, and photographs of her then existing business, for review. Mr. Walsh submitted these materials to PDK's leasing office. Ms. Pittenger subsequently informed Mr. Walsh that Plaintiff was not financially qualified to lease space at Largo Town Center.

Plaintiff has brought an action against PDK under 42 U.S.C. §§ 1981 and 1982 for racial discrimination. PDK has filed a Motion for Summary Judgment, asserting *inter alia* that Plaintiff has failed to provide any evidence of illegitimate discrimination.

## II. *LEGAL STANDARD*

█ Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller v. FDIC,* 906 F.2d 972, 973 (4th Cir.1990). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court addressed in detail the analysis a court should use in considering a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

█ In evaluating whether a dispute about a material fact is "genuine," the court

Emma Olson, Havre de Grace, pro se.

Christopher R. Dunn, DeCaro, Doran, Siciliano, Gallagher, Sonntag & DeBlasis, Lanham, MD, for Largo–Springhill.

John A. Bielec, Wendy B. Karpel, Associate County Attorneys, Upper Marlboro, MD, for Prince George's County.

### MEMORANDUM & ORDER

GARBIS, District Judge.

The Court has before it the Motion for Summary Judgment filed by Defendant Largo–Springhill Limited Partnership, also d/b/a Petrie, Dierman, Kughn, Petrie–Dierman Development Company, Inc., Petrie–Dierman and Partners, Inc., and Petrie–Dierman and Partners, Management Company, Inc. Having considered the material submitted by the parties, the Court finds a hearing unnecessary to resolve the motion.

## I. *BACKGROUND*

Plaintiff Emma Olson was the sole proprietor of a Washington, D.C. jewelry store called Jewel of the Nile. In June of 1991, Plaintiff asked her real estate agent, Al Walsh, to negotiate a contract with the landlord of Largo Town Center, a strip shopping center located in Largo, Maryland. Some-

must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In an ordinary civil case, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. However, on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

■ Finally, in evaluating any motion for summary judgment the court must bear in mind that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (citing Fed.R.Civ.P. 1).

## III. *DISCUSSION*

Title 42 U.S.C.A. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

Section § 1982 further provides:

*All citizens of the United States shall have the same right,* in every State and Territory, as is enjoyed by white citizens thereof *to* inherit, purchase, *lease,* sell, hold and convey *real* and personal *property.*

(emphasis added). Plaintiff claims these rights were violated when PDK refused to lease retail space to her at the Largo Town Center.

■ To sustain a cause of action under 42 U.S.C. § 1981, a plaintiff must show:

(1) that the owner (or responsible party) placed the property on the open market for sale or rent;

(2) that the plaintiff was willing to rent or purchase the property on the terms specified by the owner;

(3) that the plaintiff communicated this willingness to the owner at a time when the property was available for sale or rent;

(4) that the owner refused to rent or sell the property to the plaintiff on the terms which the owner indicated would otherwise be satisfactory; and;

(5) that there is no apparent reason for the refusal of the defendant to rent the property to the plaintiff other than the plaintiff's race.

Once the plaintiff establishes this *prima facie* case, the defendant may come forward and rebut the evidence establishing any of these elements, or demonstrate that there were reasons other than the plaintiff's race underlying the refusal to rent. *Bush v. Kaim*, 297 F.Supp. 151, 162 (N.D.Ohio 1969) (citing *Cypress v. Newport News General and Nonsectarian Hospital Ass'n,* 375 F.2d 648 (4th Cir.1967) and other cases).

[6] Plaintiff asserts that because direct proof of intentional discrimination is often unavailable, she may establish Defendant's intent inferentially by borrowing the Title VII model articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Using the *McDonnell–Burdine* model, a plaintiff may raise a presumption of discrimination by showing the following:

(1) that the [plaintiff] belongs to a protected group;

(2) that the [plaintiff] applied for and was qualified for a position for which the [defendant] was seeking applicants;

(3) that despite the [plaintiff's] qualifications, she was rejected; and

(4) after her rejection, the position remained open and the [defendant] continued to seek applicants from persons of the applicant's qualifications.

*McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. If this preliminary burden is met, the

burden shifts to the defendant to rebut the inference of discrimination by offering legitimate, non-discriminatory reasons for its decision. If the defendant meets its burden, the burden returns to the plaintiff to establish by a preponderance of the evidence that defendant's proffered reasons are mere pretext for intentional racial discrimination. *Id.*

■ Plaintiff has failed to meet her preliminary burden under both the § 1982 and Title VII models. As for the § 1982 test, while it is undisputed that retail rental space was available on the open market at Largo Town Center and that Plaintiff was interested in that space, she has not established that any rental terms were negotiated or specified by PDK, or that PDK identified any terms under which rental would be "satisfactory." Similarly, under the *McDonnell–Burdine* test, Plaintiff has failed to establish that she was an "otherwise qualified" lessee.

More significantly, assuming *arguendo* that objective rental terms had been indicated or that she was qualified to rent, Plaintiff has offered no evidence that race played any part in the Defendant's refusal to lease the property to her. Indeed, from the evidence presented, it appears that Defendant did not even know Plaintiff's race before making its decision not to lease. Plaintiff's real estate agent admitted that he never informed PDK agent Pittenger that Plaintiff was black, that the subject of race had never come up, and that he was never told that race had anything to do with PDK's decision not to lease. Walsh Dep. at 36–37. Plaintiff herself concedes that the first time she spoke with any of Defendant's representatives about race was *after she had been deemed financially "unqualified" for the lease*, at which time she informed Ms. Pittenger that she was black. Pl. Dep. at 126–28. Similarly, PDK contends that it became aware of Plaintiff's race only after the decision not to lease had been made, when Plaintiff filed a discrimination complaint with the Prince George's County Human Relations Commission. Pittenger Dep. at 105. Plaintiff alleges that Defendant was in fact made aware of her race before the decision not to lease by pictures of her store submitted to Pittenger in which Plaintiff appears. This speculation is questionable at best, given that (1) Plaintiff had been instructed to submit photos of the decor of her existing business, not of herself, (2) only one of thirteen photos submitted contained a picture of Plaintiff; and (3) the person in the photo was not identified as the Plaintiff.

By contrast, Defendant has offered numerous legitimate, non-discriminatory reasons why Plaintiff was not considered a suitable lessee. PDK contends that a review of Plaintiff's financial information led it to fear that Plaintiff would not be able to meet monthly rent obligations or be successful at their location. Specifically, Pittenger noted the following areas of concern motivating her decision not to enter negotiations with Plaintiff:

(1) Insufficient cash on hand for start-up costs;

(2) Questionable profitability of Plaintiff's existing store;

(3) Questionable ability to meet monthly expenses at Largo Town Center;

(4) Plaintiff had only one other store, which was not located in the immediate area and had no apparent name recognition in the Largo area;

(5) Plaintiff did not advertise; and

(6) Plaintiff's existing customers were not likely to travel to the Largo Town Center area for shopping.

Thus, even if Plaintiff had been able to raise a presumption of discrimination, Defendant has met its burden by supplying legitimate, non-discriminatory reasons for its actions.

Rather than challenging these explanations as incredible, Plaintiff relies on the Prince George's County Human Relations Commission's (the "HRC's") preliminary determination of "reasonable cause" to investigate a discrimination claim, and the fact that Defendant had not requested the same background information of a non-minority prospective client to prove that PDK's reasons are mere pretext for racial discrimination.

■ Federal civil rights statutes contain nothing to authorize the admission of administrative findings into evidence. *See Smith v. Universal Services, Inc.,* 454 F.2d 154, 156 (5th Cir.1972). Instead, "civil litigation at the district court level clearly takes on the

character of a trial de novo, completely separate from [administrative actions]." *Id.* at 157. Thus, while administrative findings may be considered by the court, it "is in no sense binding ... and is to be given no more weight than any other testimony." *Id. See also Georator Corp. v. EEOC,* 592 F.2d 765, 768 (4th Cir.1979) ("[An administrative agency] has no adjudicative power, and its proceedings are not binding upon the employer."); *Cox v. Babcock and Wilcox Co.,* 471 F.2d 13, 15 (4th Cir.1972) (citing *Smith* dissent which "expresses persuasive reasons why such evidence should not be admitted" and noting that "even in those cases where a contrary view is taken, it is stated that the admission of such records is discretionary with the District Court.")

Thus, the preliminary determination of "reasonable cause" by the county HRC is not binding upon this court and is to be given only the weight which, upon its review, the court believes it to be worth. In this case, the HRC report lays out basically the same facts as stated above. Interestingly, while the report noted the Defendant did have several black owned and/or operated businesses located in Largo Town Center, it also noted that "[t]hese stores are traditional [sic] owned and operated black businesses, such as a barber shop, beauty shop, card store and a food store." HRC Determination at 3. Without evaluating the soundness of this observation, the Court does not believe that the HRC Determination provides any evidence of racial discrimination against Plaintiff.

With respect to Defendant's concurrent negotiations Gouterhall–Sheffey ("Gouter-

hall"), a well-known regional jewelry chain, Plaintiff has provided no evidence that PDK discriminated between the two on anything other than legitimate bases. Importantly, section 1982 does not prohibit an owner from considering factors *other than race* in determining whether to sell or rent his or her property; "[a]n owner can refuse to rent or sell to anyone ... for any reason he chooses, so long as the motivating reason for this decision is not the individual's race or color." *Bush,* 297 F.Supp. at 162. Whereas racial discrimination is strictly prohibited under the federal civil rights statutes, "one who sells or leases real estate '[has] a right to refuse approval on any honest basis unrelated to the race of the prospective [lessee]." *Madison v. Jeffers,* 494 F.2d 114, 117 (4th Cir.1974).

While Defendant admittedly did not require the same degree of background information of Gouterhall, it has provided credible evidence that this disparate treatment was based on industry standards regarding size and business reputation of prospective tenant companies, rather than the race of the owners or operators. In addition, Defendant has provided evidence that once it learned of Gouterhall's actual financial unsoundness, it ceased all rental negotiations with that company. In short, Plaintiff has offered no evidence of any disparate treatment based on race. To the contrary, Defendant has presented evidence which would appear to rebut any implication of discrimination: of Defendant's tenant stores at Largo Town Center, a vast majority (77%) are owned and/or operated by minorities and more than half (55%) by African–Americans.[1]

---

1. Plaintiff also attempts to draw upon the theories of "adverse impact" and "mixed motives" discrimination to support her case. In an "adverse impact" case, a plaintiff may demonstrate that neutral policies and practices which are applied evenhandedly to all applicants nonetheless have the effect of disproportionately excluding minorities. *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). The burden then shifts to the defendant to prove that the challenged requirement "has a manifest relationship" to its business interest. The plaintiff must then show that other selection devices without a similar discriminatory effect would also serve the defendant's legitimate business interests. *Id.,* 433 U.S. at 329, 97 S.Ct. at 2726–27.

In this case, given that a supermajority of Defendant's other tenants at Largo Town Center were minorities and a majority African–American, Plaintiff has failed to make out a *prima facie* case of adverse impact discrimination. Moreover, Plaintiff cannot seriously dispute that Defendant's proffered criteria (i.e., financial soundness and stability) have a "manifest relationship" to its leasing business, or that non-financial considerations could as effectively protect its economic interests.

In a "mixed motives" discrimination case, once a plaintiff shows that an illegitimate discriminatory reason played a motivating part in an adverse decision, a defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not

## IV. CONCLUSION

In sum, Plaintiff has failed to provide any substantive evidence that Defendant's decision not to lease retail space in the Largo Town Center was motivated by race. Defendant, on other hand, has offered substantial evidence that this decision was based on legitimate, non-discriminatory concerns about the financial viability of Plaintiff's store at the Largo location. The fact that Defendant required Plaintiff to submit more extensive background information about her business than a well-known regional chain non-minority competitor does not establish racial discrimination. Moreover, statistics regarding the large number of existing minority tenants seem to refute any claim of adverse impact or mixed motive discrimination. Plaintiff has simply failed to raise any genuine issue of material fact to support its claim of racial discrimination, and the Defendant is entitled to judgment as a matter of law.

For the foregoing reasons:

1. The Defendant's Motion for Summary Judgment is **GRANTED.**

2. Judgment shall be entered by separate Order.

**SO ORDERED.**

allowed the discriminatory motive to pay such a role. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989). In this case, Plaintiff has not established that race played *any* part in Defendant's decision not to lease to her, much less a "motivating part."